Mr. Patrick G. Gilligan Ocala City Attorney 7 East Silver Springs Boulevard Suite 500 Ocala, Florida 34470
Dear Mr. Gilligan:
On behalf of the City of Ocala and the Ocala/Marion County Metropolitan Planning Organization, you ask substantially the following questions:
1. May the Ocala/Marion Metropolitan Planning Organization own and operate a mass transit system?
2. If not, may the interlocal agreement creating the Metropolitan Planning Organization grant such authority?
3. If so, is the Metropolitan Planning Organization covered by sovereign immunity limitations in operating such a system?
In sum:
1. The Ocala/Marion Metropolitan Planning Organization has no statutory authority to own and operate a mass transit system.
2. The interlocal agreement creating the Metropolitan Planning Organization may not broaden the existing authority of the parties to the agreement to include the ownership and operation of a mass transit system, when not all the parties to the agreement possess independent authority to provide transportation services.
3. In light of the answers to Questions One and Two, no response is necessary. However, for a general discussion of the applicability of section 768.28, Florida Statutes, to entities created by interlocal agreements, Attorney General Opinion 95-44 may be consulted.
You state that the Ocala/Marion County Metropolitan Planning Organization was created pursuant to section 339.175, Florida Statutes (1996 Supplement), in an interlocal agreement whose current parties are Marion County, the cities of Ocala, Dunnellon and Belleview, and the Florida Department of Transportation (DOT). Under its adopted transit development plan, the organization proposes to establish a mass transit system in Marion County.
Question One
Section 339.175, Florida Statutes (1996 Supplement), states the intent of the Legislature to encourage and promote the development of transportation systems. To accomplish this objective, the statute states that metropolitan planning organizations (MPO) shall
"develop, in cooperation with the state, transportation plans andprograms for metropolitan areas. Such plans and programs must provide for the development of transportation facilities that will function as an intermodal transportation system for the metropolitan area. The process for developing such plans and programs shall be continuing, cooperative, and comprehensive, to the degree appropriate, based on the complexity of the transportation problems."[1] (e.s.)
The authority and responsibility of an MPO is to "manage a continuing, cooperative, and comprehensive transportation planning process that results in the development of plans and programs which are consistent . . . with the approved local government comprehensive plans of the units of local government the boundaries of which are within the metropolitan area of the M.P.O."[2] Moreover, the powers and authority of an MPO are "those specified in this section or incorporated in an interlocal agreement authorized under s. 163.01."[3] It is the Legislature's intent that each MPO will be "involved in the planning and programming of transportation facilities, including, but not limited to, airports, intercity and highspeed rail lines, seaports, and intermodal facilities, to the extent permitted by state or federal law."[4]
Thus, the extent of an MPO's power and authority is set forth in section 339.175, Florida Statutes (1996 Supplement), and is clearly limited to the planning and programming process relative to the transportation needs of the area served by the MPO.[5]
While the statute recognizes the MPO's role in programming transportation facilities, nothing contained therein authorizes an MPO to own and operate a transit system. The statutory authority to plan and program transportation needs for an area does not convey the additional substantive power to own and operate transportation facilities.[6]
Accordingly, it is my opinion that section 339.175, Florida Statutes (1996 Supplement), does not grant the Ocala/Marion Metropolitan Planning Organization the substantive authority to own and operate a mass transit system.
Question Two
Section 163.01, Florida Statutes (1996 Supplement), the "Florida Interlocal Cooperation Act of 1969," authorizes public agencies to enter into interlocal agreements in order to exercise any "power, privilege, or authority which such agencies share in common and which each might exercise separately."[7] The purpose of the act is to allow local governmental units to make efficient use of their powers by enabling them to cooperate with other local governmental units in a mutually beneficial way to provide services and facilities in a manner consistent with geographic, economic, population, and other factors influencing the needs and development of local communities.[8]
Section 339.175(5), Florida Statutes (1996 Supplement), recognizes that the authority of an MPO includes those powers specified in that section or incorporated in an interlocal agreement. Section163.01(4), Florida Statutes (1996 Supplement), however, limits the powers or authority exercised pursuant to an interlocal agreement to those the parties share in common and that may be exercised separately. In this instance, it appears that the ownership and operation of a public transit system may be appropriately carried out by a municipality or a county under its home rule powers in order to carry out a municipal or county purpose.[9]
The ability of DOT to own and operate a transit system, however, appears to be restricted to certain conditions. The Florida Public Transit Act[10] sets forth the responsibilities of the department in providing public transit in this state. Section 341.041, Florida Statutes, in part, specifies that DOT shall:
"(7) Provide transit service through contracts with existing publicly or privately owned transit systems, where such service represents the transit element of a corridor project designed to relieve urban traffic congestion.
(8) Provide new transit service and equipment where a public need has been determined to exist pursuant to the transportation planning process and where all of the following conditions occur:
(a) No other governmental entity of appropriate jurisdiction exists.
(b) The service cannot be reasonably provided by a governmentally owned or privately owned public transit provider.
(c) The cost of providing the service does not exceed the sum of revenues resulting from user fares, special transit services such as charter operations, local fund participation, and specific legislative appropriation for this purpose.
The department may buy, sell, own, lease, and otherwise encumber facilities, transit vehicles, and appurtenances thereto, as necessary to provide such service; or the department may provide service by contracts with governmentally owned or privately owned service providers.
(9) Provide public transportation service where emergency service is required, provided that no other private or public transportation operation is available to provide needed service and that such service is clearly in the best interests of the people or communities being served. Such service shall be provided by contractual service, actual operation of state-owned transit equipment and facilities, or any other means deemed appropriate by the department and shall be limited to a period not to exceed 2 years."
Thus, the conditions under which DOT may provide transportation services are statutorily prescribed and may not be circumvented through the use of an interlocal agreement. In this instance, the specific conditions in section 341.041(8), Florida Statutes, whereby the department may provide new transit service and equipment, would not be met, in that the county and the municipalities that are members of the Metropolitan Planning Organization have jurisdiction to provide such service in the area. Nothing contained in Chapter 339 or Chapter 341, Florida Statutes, contemplates that DOT may exercise its authority to provide transportation services as part of a consortium of governmental entities. Rather, it would appear that the department's authority hinges on there being no viable alternative governmental entity to provide such service.
Accordingly, it is my opinion that the Metropolitan Planning Organization may not use an interlocal agreement to extend the existing authority of the parties to the agreement to include the ownership and operation of a mass transit system, when not all the parties to the interlocal agreement possess independent authority to provide transportation services.
Question Three
In light of the answers to Questions Two and Three, no response to this question in necessary. However, in Attorney General Opinion 95-44, this office concluded that a non-profit corporation created by interlocal agreement to carry out the duties imposed by state and federal law was a state agency for purposes of section 768.28, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 339.175, Fla. Stat. (1996 Supp.).
[2] Section 339.175(4), Fla. Stat. (1996 Supp.).
[3] Section 339.175(5), Fla. Stat. (1996 Supp.).
[4] Id.
[5] Cf., s. 339.175(6), Fla. Stat. (1996 Supp.), requiring each MPO to develop a 20-year long-range transportation plan that, at a minimum, must identify transportation facilities that will function as an integrated metropolitan transportation system and a financial plan demonstrating how the plan can be implemented indicating public and private resources available to carry out the plan; and s. 339.175(7), Fla. Stat. (1996 Supp.), requiring a MPO, "in cooperation with the state and affected public transportation operators, [to] develop a transportation improvement program for the area within the jurisdiction of the M.P.O."
[6] See, State Department of Environmental Regulation v. PuckettOil Company, Inc., 577 So.2d 988, 989 (Fla. 1st DCA 1991) (powers of an administrative agency are measured and limited by statutes or acts in which such powers are expressly granted or implicitly conferred).
[7] Section 163.01(4), Fla. Stat. (1996 Supp.).
[8] See, s. 163.01(2), Fla. Stat. (1996 Supp.).
[9] See, s. 166.021(1), Fla. Stat., granting municipalities the authority to "exercise any power for municipal purposes, except when expressly prohibited by law." And see, s. 125.01, Fla. Stat. (1996 Supp.), granting county legislative and governing bodies the power to carry on county government, to the extent not inconsistent with general or special law.
[10] Sections 341.011-341.061, Fla. Stat.